In the Matter of LUIS ROSADO, Petitioner, v ROBERT KUHL-MANN, as Superintendent of Sullivan Correctional Facility, et al., Respondents.

Third Department, November 21, 1990

**APPEARANCES OF COUNSEL**

*Robert Selcov (Deborah Schneer* and *David C. Levin* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Peter H. Schiff* and *Martin A. Hotvet* of counsel), for respondents.

### OPINION OF THE COURT

Mahoney, P. J.

On August 18, 1989, petitioner, a prisoner confined at Clinton Correctional Facility in Clinton County, was involved in a serious incident as correction officers attempted to take him to the facility psychiatric unit for observation pursuant to an emergency referral. In the course of the removal, petitioner, who was armed with a razor blade and two pens, inflicted a blade injury to Correction Officer Donald Uhler's left arm that required 25 sutures to close and also injured other officers. After being subdued, petitioner was removed from his cell, transferred to Sullivan Correctional Facility in Sullivan County and placed in an observation cell in the psychiatric unit of that institution. Because of the transfer, Sullivan Correctional Facility requested and received an extension of time to hold any disciplinary hearing provided that it was commenced within seven days of petitioner's release from the observation cell. On September 8, 1989, the day following his cell release, petitioner was served with a misbehavior report charging him with assault, refusal to obey orders and weapons possession.

The hearing commenced on September 12, 1989, but was adjourned because petitioner's assistant had not completed work on the case. The hearing continued on September 18, 1989, when petitioner declined assistance and pleaded not guilty to the charges. Based on the misbehavior reports, the testimony of the officers and petitioner's testimony, the Hearing Officer found petitioner guilty of the three charges and imposed a penalty of six years in the special housing unit, six years' loss of good time and six years' loss of privileges. Upon administrative review, the disposition was affirmed with the directive that petitioner's confinement and loss of privileges be reviewed after three years. Petitioner commenced this CPLR article 78 proceeding which was transferred to this court.

In *Matter of Huggins v Coughlin* (76 NY2d 904, *affg* 155 AD2d 844), the Court of Appeals agreed with our conclusion "that in the context of a prison disciplinary proceeding in which the prisoner's mental state is at issue, a Hearing Officer is required to consider evidence regarding the prisoner's mental condition" *(supra,* at 905). It remains to determine when a

prisoner's mental state is "at issue". As there is no real dispute that petitioner did not affirmatively raise his mental condition at the hearing, petitioner argues that the circumstances of the incident, including petitioner's history of mental treatment, provided essentially constructive notice of petitioner's mental distress at the time of the incident to the Hearing Officer who erroneously failed to consider this factor in disposing of the proceeding. Respondents counter that even if constructive notice could suffice to place petitioner's mental condition "at issue", the facts of this case do not lend themselves to imposing this responsibility on the Hearing Officer.

We have found no appellate decision in New York resolving this precise question. However, in *People ex rel. Reed v Scully* (140 Misc 2d 379, 382), Supreme Court held that "the mental competence and mental illness of a prisoner must be considered during the prison disciplinary process where a [mental disease or defect] adjudication has been made or a well-documented history of serious psychiatric problems calls the prisoner's mental health into question". This case was cited with approval by the Court of Appeals in *Matter of Huggins v Coughlin (supra)* and we shall take our cue accordingly.

The facts involved in this proceeding strike us as analogous to those specified by Supreme Court in the language previously quoted. It seems to us, then, that where prison officials initiate an emergency referral for mental health services for an inmate and disciplinary proceedings arise from an incident occurring while the referral is being executed, the inmate's mental condition is an obvious matter of concern. The Hearing Officer, therefore, should consider the inmate's mental condition in resolving the disciplinary proceeding. The Hearing Officer in this proceeding failed to do so and the determination must be annulled and remitted for a new hearing so that petitioner's mental condition can be considered.

In reaching this result, we find no merit to petitioner's argument that expungement is required because the hearing was untimely commenced. In the absence of any substantive prejudice resulting from the minimum delay, assumed for current purposes to be improper, we find no reason to expunge *(see, Matter of Taylor v Coughlin,* 135 AD2d 992, 993). Since the other issues raised concern alleged procedural defects, our remittal for a new hearing obviates the need for any discussion of them.

KANE, J. (dissenting). I respectfully dissent because I do not

construe *Matter of Huggins v Coughlin* (76 NY2d 904) to require that *constructive* notice of an inmate's "mental distress" places his mental condition "at issue" in a prison disciplinary hearing. In my view, such an interpretation places an onerous burden on a Hearing Officer to *sua sponte* determine the relevance of an inmate's mental condition, and thus improperly shifts what has been, historically, the inmate's burden to interpose any evidence in mitigation or defense of the charges pending against him *(see, Matter of Perez v Wilmot,* 67 NY2d 615, 617).

Contrary to the majority's view, the Court of Appeals "approval" in *Matter of Huggins v Coughlin (supra)* of *People ex rel. Reed v Scully* (140 Misc 2d 379) should not dictate a contrary result, for unlike the matter at hand, in *Reed* the court was confronted with an inmate who had been adjudicated not guilty by reason of insanity in a criminal action based on the same conduct for which the prison disciplinary hearing at issue was held *(supra,* at 382). Even under those circumstances, the court concluded that "the prisoner must be given the *opportunity to submit proof* concerning his mental state at the prison disciplinary hearing" *(supra,* at 382 [emphasis supplied]). Here, as the majority points out, there is no real dispute that petitioner failed to affirmatively raise his mental state as an issue at his hearing. Consequently, although in a proper case an inmate has the right to have the Hearing Officer consider his mental state at his disciplinary hearing, the inmate bears the initial burden of placing it at issue. In my view, petitioner's failure to do so in this instance is a fatal defect and I would, therefore, confirm the determination and dismiss the petition.

Casey, Levine and Harvey, JJ., concur with Mahoney, P. J.; Kane, J., dissents in a separate opinion.

Determination annulled, without costs, and matter remitted to respondent for further proceedings not inconsistent with this court's decision.